IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRANCE WASHINGTON,** *Petitioner* | : : : | **CIVIL ACTION** |
| v. | : : | |
| **SUPERINTENDENT TICE et al.,** *Respondents* | : : : | **No. 18-5638** |

**MEMORANDUM**

PRATTER, J.                                                                                              APRIL 1, 2021

**BACKGROUND**

Terrance Washington was charged with several offenses related to robberies of state-owned liquor stores in 1996. While awaiting trial, Mr. Washington was placed under house arrest and was required to wear an electronic monitoring bracelet. A year later, Mr. Washington cut off his ankle bracelet and committed four more robberies. He was soon arrested and charged in connection with these later robberies as well.

In January 1998, a jury convicted Mr. Washington of "four counts of robbery, two counts of criminal conspiracy, two counts of violations of the Uniform Firearms Act [] and two counts of possessing an instrument of crime." Thereafter, Mr. Washington also pled guilty to "17 additional counts of robbery, conspiracy, [possessing an instrument of crime], and [violations of the Uniform Firearms Act]." Following a plea colloquy, the trial court sentenced Mr. Washington to 35-70 years' imprisonment for all of the robberies committed in 1996 and 1997.

After a lengthy appeals process that included a trip to the Pennsylvania Supreme Court, the Superior Court affirmed the judgment, and the Supreme Court of Pennsylvania denied review. Mr. Washington then filed a petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541 *et seq.* ("PCRA"), which was denied in August 2008. Mr. Washington appealed. The

1

Superior Court remanded the case to the PCRA court for an evidentiary hearing on two issues, including Mr. Washington's argument that trial counsel had rendered ineffective assistance by failing to notify him of a favorable plea deal that would have resolved all complaints against him. Mr. Washington abandoned one claim, and the PCRA court dismissed the remaining claim, finding that no such "global" plea deal was ever offered. On appeal, the Superior Court affirmed the denial of PCRA relief, and the Pennsylvania Supreme Court denied review. Thereafter, Mr. Washington filed this habeas petition.[1]

## LEGAL STANDARD

Federal courts can only grant a writ of habeas corpus if a claim "was 'adjudicated on the merits' in state court." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 281 (3d Cir. 2018) (citing 28 U.S.C. § 2254(d)). And if the claim was adjudicated on the merits in state court, habeas relief can only issue if adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2).

"If a claim was not adjudicated on the merits in state court, [the court] review[s] legal questions and mixed questions of law and fact *de novo*." *Bennett*, 886 F.3d at 281 (citing *Cone v. Bell*, 556 U.S. 449, 472 (2009)). The state court's factual determinations are presumed to be correct but may be rebutted by clear and convincing evidence. *Id.* at 282 (citing *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

---

[1] The foregoing procedural history is drawn from docketed filings in this case.

"As a general rule, federal courts may exercise the power to consider habeas applications only where 'it appears that the applicant has exhausted the remedies available in the courts of the State.'" *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (quoting *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995)). This "exhaustion rule" requires a petitioner to "fairly present" federal claims in state court before bringing them in federal court. *Id.* (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *Id.* (citing 28 U.S.C. § 2254(b)). In that case, a petitioner has procedurally defaulted his or her claims and the federal court may not consider the merits of the claim unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

## DISCUSSION

### I. Admission of Prejudicial Evidence

Mr. Washington brings two closely-related claims, arguing that the trial court improperly admitted two categories of evidence: "consciousness of guilt" evidence and "common plan, scheme and design" evidence. Mr. Washington argues that introduction of these two categories of evidence violated the Pennsylvania Rules of Evidence and the Due Process Clause of the Fourteenth Amendment. Neither argument has merit.

Preliminarily, Mr. Washington's argument that introduction of this evidence violated the Pennsylvania Rules of Evidence is not cognizable. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). That includes "violations of state law procedural or evidentiary rules." *Hart v.*

3

*Lawton*, No. CIV.A. 13-3363, 2014 WL 5286601, at *2 (E.D. Pa. Oct. 15, 2014) (citing *Estelle*, 502 U.S. at 67).

Thus, Mr. Washington's complaint can only succeed if he can show that admission of this evidence violated the U.S. Constitution—not just state law.[2] But introduction of evidence with "some prejudicial effect" does not violate the Constitution. *See Spencer v. Texas*, 385 U.S. 554, 562 (1967). To violate the Constitution, an erroneous introduction of evidence must compromise "the fundamental elements of fairness in a criminal trial." *Id.* at 563-64. Introducing "consciousness of guilt" evidence does not meet this high bar. *See United States v. Beldini*, 443 F. App'x 709, 720 (3d Cir. 2011) (finding that introduction of consciousness of guilt evidence did not violate the Due Process Clause); *Gant v. Giroux*, No. CV 15-04468, 2017 WL 2825927, at *16 (E.D. Pa. Feb. 27, 2017), *report and recommendation adopted*, 2017 WL 2797911 (E.D. Pa. June 28, 2017) (same).

Similarly, the introduction of common plan, scheme and design evidence was not "so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial." *Bronshtein v. Horn*, 404 F.3d 700, 730 (3d Cir. 2005) (quoting *Lesko v. Owens*, 881 F.2d 44, 52 (3d Cir. 1989)). As Magistrate Judge Rice noted, evidence of Mr. Washington's other crimes was relevant because they followed a distinctive "modus operandi."[3] And during one of these similar robberies, Mr. Washington was recognized by one of

---

[2] The Report and Recommendation states in a footnote that Mr. Washington procedurally defaulted his argument that introduction of consciousness of guilt and common plan, scheme, and design evidence violated the Due Process Clause of the Fourteenth Amendment. But Mr. Washington did indeed make this argument on direct appeal. Therefore, the Court does not adopt footnote 4 of the Report and Recommendation.

[3] This modus operandi was that "one individual went in the state store, would go to the back of the store, pick up a packet of wine coolers, walk toward the security guard, put down the wine coolers, pull a gun on the security guard, demand the security guard's gun, make him lie down on the floor, at which point

his victims, who stated on the phone: "I'm being robbed now by Terrance Washington." Because this evidence was relevant to demonstrating that Mr. Washington was the perpetrator of the actual robberies at issue, and was not merely used as unlawful "propensity" evidence, its introduction did not violate the Due Process Clause.

Thus, admission of "consciousness of guilt" and "common plan, scheme, and design" evidence is not a valid basis for Mr. Washington's habeas petition.

## II. Ineffectiveness of Counsel—Consolidation

Mr. Washington next argues that his trial counsel was ineffective because counsel should have objected to consolidation of the first four robbery cases into two trials. He notes that a different judge on the same court had previously denied the Commonwealth's consolidation motion, and argues that the later consolidation was misjoinder. The Superior Court held that counsel was not ineffective because consolidation of the cases was required by Pennsylvania law. As noted above, a federal habeas court cannot review a state court's application of state law, so the Court must assume that this holding was correct. What remains is Mr. Washington's argument that consolidation violated his constitutional right to a fair trial.

Consolidation only violates the Constitution if "the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Jimenez*, 513 F.3d 62, 83 (3d Cir. 2008) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Consolidation caused no prejudice here. Even if the Commonwealth tried each of Mr. Washington's robberies separately, evidence of all four robberies was admissible in each case as common plan, scheme, and design evidence, as discussed above. The end result would have been the same—a jury would have been able to consider evidence from each robbery when

---

the second defendant" would rob the people in the store's office. Both defendants would then steal the money in the cash registers.

5

determining whether Mr. Washington was guilty of any particular robbery. Because Mr. Washington did not suffer prejudice from consolidation, he did not suffer prejudice from his counsel's failure to challenge consolidation.

### III. Ineffectiveness of Counsel—Failure to Convey Plea Offer

Mr. Washington next argues that counsel was ineffective for failing to convey a "global plea offer," which he argues would have resolved all of his robbery cases. His first piece of evidence as to the existence of this offer is three entries on the criminal docket. These three entries, dated September 3, 1996, December 9, 1996, and January 7, 1998, each read: "offer rejected." Mr. Washington's second piece of evidence is testimony from his trial counsel at an evidentiary hearing, at which his counsel testified that the Commonwealth offered either 20-40 years or 25-50 years for "all the cases," and admitted that he did not discuss the offer with Mr. Washington because Mr. Washington seemed eager to continue to trial. Mr. Washington further argues that had he heard of an offer for up to 60 years for all of his cases, he would have considered it.

But Mr. Washington's argument omits critical pieces of information. During cross-examination, Mr. Washington's trial counsel clarified that "all of the cases" referred to all of his cases from the 1996 robberies, not the four additional robberies he committed while awaiting trial. The PCRA court credited this later clarification from Mr. Washington's trial counsel. *See id.* The PCRA court also ruled that the three docket entries of "offer rejected" were likely clerical errors, a determination that was based on testimony from various witnesses that any time a case was scheduled to go to trial "the matter would be marked 'offer rejected' with the assumption that there had been an offer," even if no such offer had been made. The court also concluded that trial counsel had a reasonable basis for not conveying the offers that were made because Mr. Washington had previously rejected all offers and was eager to go to trial.

6

It is not enough for Mr. Washington to demonstrate that "reasonable minds reviewing the record might disagree about the finding in question." *Wheeler v. Rozum*, 410 F. App'x 453, 459-60 (3d Cir. 2010) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Rather, Mr. Washington must show that the PCRA court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 459 (quoting 28 U.S.C. § 2254(d)(2)). He has not done so here. The PCRA court based its conclusion that there was no global plea offer, and that Mr. Washington was not prejudiced, on testimony from several witnesses and examination of an extensive record that included contemporaneous notes from Mr. Washington's trial counsel. Because these findings of fact were not unreasonable, the Court will not disturb the PCRA court's holding.

## IV.     Excessive Sentence

Mr. Washington next argues that the trial court violated his Eighth Amendment rights by imposing an excessive sentence. He argues that the sentence was excessive because the trial court imposed the seven robbery sentences to run consecutively, not concurrently. The result was a sentence of 35-70 years' imprisonment.

This argument is procedurally defaulted. On direct appeal, Mr. Washington argued that the sentence was "manifestly excessive and clearly unreasonable [because the trial] court failed to consider mitigating factors." He never added an Eighth Amendment challenge to that argument.

And in any case, this claim is meritless. "The Eighth Amendment does not require strict proportionality between crime and sentence in non-capital cases. Rather, it 'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" *James v. Folino*, No. CV 07-2162, 2015 WL 5063782, at *7 (E.D. Pa. Aug. 25, 2015) (quoting *Harmelin v. Michigan*, 501 U.S. 957,

1001 (1991) (Kennedy, J., concurring)). Mr. Washington was convicted of two robberies and pled guilty to robbing 17 additional people. He received a sentence of 35-70 years, which was far below the Commonwealth's argument for a sentence of 55-110 years. And even though the trial court ordered that his seven robbery sentences run consecutively, it ordered the sentences for conspiracy and firearms violations to run concurrently, which meant that he would serve no additional time for those charges. Finally, while Mr. Washington characterizes his offense as merely a "15-month crime spree," during those 15 months Mr. Washington robbed dozens of people at gunpoint, put innocent lives in danger, and showed a complete disregard for the law. The Court cannot say that a sentence of 35-70 years for these numerous acts of armed robbery is grossly disproportionate or constitutes cruel and unusual punishment.

## V.    Juror Bias

Mr. Washington argues that a juror who stated that members of her family had been victims of a crime "exhibited clear bias & partiality." Mr. Washington argues that the trial court should have removed the juror, and that his trial counsel should have used a peremptory strike to remove the juror.

This argument is procedurally defaulted because he failed to make this argument at trial or on appeal. It is also meritless because Mr. Washington has not shown that the juror was biased. The juror stated that she could put her personal experiences aside. Trial courts have "broad discretion" in ruling on juror bias. *Dennis v. United States*, 339 U.S. 162, 168 (1950). In determining whether a juror is biased, "the Constitution lays down no particular tests." *Id.* at 172. The Superior Court's decision to credit the juror's statement that she was unbiased was not an unreasonable determination of the facts. *See also United States v. Davis*, No. CR 11-123, 2017 WL 1133948, at *4 (E.D. Pa. Mar. 27, 2017) (noting that counsel was not ineffective for not

striking juror from panel where juror said she could be impartial despite having been the victim of a crime). Therefore, this argument is meritless.

## VI. *Batson* Challenge

Mr. Washington next argues that the Commonwealth sought to exclude African-American men from the panel by striking two of them from the jury, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

This argument is procedurally defaulted. While Mr. Washington's trial counsel raised this argument during jury selection, Mr. Washington did not pursue the claim on direct appeal or in his PCRA petition.

And even if the claim was not procedurally defaulted, Mr. Washington must show statistical disparities sufficient to demonstrate purposeful discrimination. *See Batson*, 476 U.S. at 96-98; *Jones v. Ryan*, 987 F.2d 960, 971 (3d Cir. 1993). The strike rate for African-American men was 2/7 or 35%. In the end, African-American men comprised eight percent of the jury pool as well as eight percent of the jury—which cannot be characterized as strong evidence of purposeful discrimination. Therefore, Mr. Washington's *Batson* claim is meritless.

## VII. Illegal Search and Seizure

Mr. Washington next argues that the police's search of his girlfriend's home, and seizure of a firearm, violated his Fourth Amendment rights. But this argument was not made on direct appeal, nor is it referenced anywhere in the PCRA opinion. Therefore, this claim is procedurally defaulted and is not cognizable. *See, e.g.*, *U. S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978).

## VIII. Illegal Sentencing

Mr. Washington next argues that his sentence was illegal because he was never told that he would be subject to a mandatory minimum sentencing provision and because the mandatory

minimum sentence violated *Alleyne v. United States*, 570 U.S. 99 (2013). Mr. Washington's argument that he was not informed that he would be subject to a mandatory minimum is directly contradicted by the record. Moreover, the Pennsylvania Supreme Court held that *Alleyne* was not retroactive, and, as a result, it did not apply to Mr. Washington on collateral review. *Commonwealth v. Washington*, 142 A.3d 810, 819 (Pa. 2016). This decision was not an unreasonable application of *Alleyne*; indeed, the Third Circuit Court of Appeals has also held that *Alleyne* is not retroactive. *See United States v. Winkelman*, 746 F.3d 135, 136 (3d Cir. 2014). The Court must follow this precedent.

IX. **Involuntary Plea—Consecutive Sentence**

Mr. Washington also argues that his plea was involuntary because counsel failed to inform him what a "consecutive" sentence meant, or to warn him that he could be sentenced to consecutive sentences.

The Superior Court rejected Mr. Washington's argument, noting that he was informed that he faced a maximum penalty of 570 years in prison and $1 million in fines. Thus, even if Mr. Washington was not informed of the intricacies behind how his sentence could be calculated, he understood the bottom line: if he pled guilty, he faced up to 570 years in prison. Accordingly, the Superior Court's determination that Mr. Washington's plea was knowing and voluntary was not contrary to federal law, nor was it an unreasonable determination of the facts. *See, e.g., Phillips v. Superintendent of SCI-Huntingdon*, No. CIVA 05-3042, 2007 WL 626055, at *8 (E.D. Pa. Feb. 22, 2007) ("[E]ven if Phillips's attorney failed to adequately explain to him the possibility of mandatory consecutive sentences . . . [Petitioner was aware] that his sentences on various charges could run consecutively and that his maximum sentence could be as much as 47 years. . . .").

## X. Involuntary Plea—Elements of Crimes Charged

Mr. Washington's next argument is that his plea was involuntary and unknowing because his trial counsel failed to explain to him the elements of the crimes for which he was charged, and the trial court did not include the elements of those crimes on the record at his plea colloquy.

This argument is not persuasive. Mr. Washington's plea colloquy took place less than two weeks after his jury trial. During that trial, the elements of the charges were read out loud to the jury in Mr. Washington's presence. And even if this were not so, Mr. Washington testified at the plea colloquy that his attorney had explained the charges to him, including the elements of the crimes he was charged with. Finally, while a defendant must "possess an understanding of the law in relation to the facts" for a plea to be voluntary, *McCarthy v. United States*, 394 U.S. 459, 466 (1969), a defendant need not understand each element of each crime he is charged with, *see United States v. Hlushmanuk*, No. CIV.A. 14-3044, 2014 WL 5780814, at *7 (E.D. Pa. Nov. 6, 2014). It is only necessary that the colloquy show that the defendant pled guilty to facts sufficient to meet each element. *See id.* Mr. Washington did so. For these reasons, Mr. Washington's claim on this point is meritless.

## XI. Inappropriate Comments by the Prosecutor

Mr. Washington also argues that the prosecutor made "inappropriate, unsubstantiated & unconstitutional comments" during closing argument. Mr. Washington points to two specific comments. First, the prosecutor stated: "I don't have to prove—it's not my burden to prove it beyond a reasonable doubt, but to a mathematical certainty." Second, the prosecutor asked the jury to consider whether the woman who identified Mr. Washington as the robber evidenced "any type of deception or hesitation." The prosecutor then stated: "I submit that [she] didn't." Mr. Washington argues that this was inappropriate vouching.

Neither of these comments "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 182 (1986). The Superior Court held that the jury was unlikely to have been swayed by the prosecutor's comment about the burden of proof because the jury later received extensive instructions that made it clear that each element had to be proven beyond a reasonable doubt. This was not an unreasonable application of the law.

Mr. Washington's argument about inappropriate vouching is also procedurally defaulted. And even if it were not, the prosecutor did not engage in inappropriate vouching. Vouching occurs when the prosecutor assures that the witness is credible based on evidence not before the jury. *See, e.g., Buel v. Vaughn*, 166 F.3d 163, 176 (3d Cir. 1999). Here, the prosecutor merely asked the jury to refer to the evidence that they had already seen, including the witness's statements and demeanor, and to consider whether the witness demonstrated "any type of deception or hesitation." Therefore, this argument is without merit.

### XII. Cumulative Error

Finally, Mr. Washington argues that the cumulative effect of multiple errors undermined his due process rights. This claim is procedurally defaulted. And even if it were not, Mr. Washington has failed to show any violation occurred, much less a set of violations that cumulatively undermines the fundamental fairness of the trial. *See Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008). Therefore, this argument is also unavailing.

### CONCLUSION

For the forgoing reasons, the Court denies Mr. Washington's Petition for Writ of Habeas Corpus. The Court adopts Magistrate Judge Rice's Report and Recommendation in part and modifies the Report and Recommendation in part, as detailed in this memorandum. Because

Mr. Washington has not made "a substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2). An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE